Supreme Court precedent requires reversal of this case. Beacon Theatres and its progeny destruct that when a party asserts legal and equitable claims that are based on the same facts, he has the 7th Amendment right to have a jury decide all common issues of fact. Let me ask you a preliminary hypothetical. Suppose in this case the only claim in the case was the claim for changing the inventorship of the patents under section 256. Would you be entitled to a jury trial? No. Why not? Because that is an equitable claim that does not entitle the plaintiff to a jury trial. As I understand your fact, you say that there are common facts to both the state law claims and the federal claims that require a jury. Correct. What are these common facts? That's not clear to me because I take it you would agree that it's for the court to decide the inventorship question. Well, it's for the court to decide the ultimate question about whether Shum is deemed an inventor under section 256. But in the Eli Lilly case and other cases, those courts correctly had the jury decide whether by clear and convincing evidence the unnamed inventor had proven that they were co-inventors. So it is a jury question when there is a common law claim such as there is here, fraud, a claim based on fraudulent omission of an inventor that is joined in the same case with a correction of inventorship claim under section 256. The issue for the jury in that case is whether or not the parties are co-inventors. The judge has to, according to Beacon Theaters, take that finding by the jury and apply it to the ultimate legal conclusion whether under section 256 inventorship should be corrected. So the jury would have to decide whether or not there was adequate corroboration of Mr. Shum's claim to be the inventor in the documents and whatever evidence he submitted. And, of course, it would be subject to the district court's ability to JMOL the jury's decision if it believed there wasn't sufficient evidence. So, yes, in Beacon Theaters requires when there is a legal claim such as fraud based on fraudulent inventorship and an equitable claim for correction of inventorship under section 256 based on the exact same facts, that ultimate question should go to the jury. Why is correction of inventorship an equitable question, not a legal question? Well, I believe it's an equitable question because traditionally it's similar to a declaratory relief claim where the court is simply adjudicating the rights between the parties. And similar to in Beacon Theaters where one party filed for declaratory relief that they weren't filing any antitrust laws, that was the equitable claim. And the other party filed for an antitrust claim, which is a legal claim which seeks damages and other remedies. In other words, the reverse of a legal claim is an equitable claim? No, no, not at all, Your Honor. It sounds like. No, I disagree with that. I don't think that's true. I think that there… The determination of inventorship is a legal question, right? And you're saying a declaration that the inventorship is wrong is an equitable claim. I agree with that, Your Honor. I say under section 256 it's an equitable claim that's appropriate for the judge. But the underlying factual issues that pertain to that equitable issue and the legal claim for fraud based on fraudulent omission of inventorship, I say are for the jury to read. I'm curious. What would the jury specifically decide under your theory in the 256 claim? All the facts except the ultimate determination of inventorship? The jury would not decide the 256 claim. It would decide the common law issues. One of the jury instructions, as was set forth in the Eli Lilly case where there was a fraud claim and a section 256 claim, would be whether the plaintiff had proved by clear and convincing evidence that they contributed to the claims of the patent. Are you saying that the jury could not determine inventorship? No. I'm saying that that question right there is inventorship, is whether or not the parties are joint inventors. So the jury question, because it's joint, there's an equitable claim. That's an ultimate question of law, and presumably the jury could have decided that. It decides the underlying facts as well as the legal question if it's possessed of the case. Correct me if I'm misspoken. I apologize, Your Honor. I believe what I'm trying to say is that the jury must decide all common issues of fact. And one issue of fact that it must decide is whether or not the unnamed inventor has shown by clear and convincing evidence that they contributed to the claims. The judge must take that decision, as it did in Eli Lilly in the district court, in the Furon case and in the C.R. Baird case, and apply it under suit 256 to the ultimate question under 256 whether or not the parties should be… If Mr. Shum was the inventor, have they then engaged in various kinds of misconduct in purporting to show that Mr. Laville was the inventor? And why isn't the question of whether Mr. Shum has or hasn't proven by clear preponderance of the evidence that he is the inventor, why isn't that an independent question and that's to be determined by the court? And then on the basis of that, the jury trial. If the inventorship issue had come out the other way, if the court had held that Mr. Shum was the inventor, then I take it to be no doubt you would be getting your jury trial on the state law claim. Correct. In deciding whether or not Mr. Shum should be an inventor under the patent side issue, the jury should look at all pertinent evidence. That's the Ethicon case and several other cases from this court. All the pertinent evidence that the trial court would have looked at if this was solely a section 256 case. Let me interrupt this dialogue to ask you, we've just about exhausted your time. Is this the focus of your appeal, whether you should or should not have had a jury trial on the issues that you're talking about, or are you also asking us on this appeal to look at whether in fact there was error in the determinations of the district court as to who the inventor was? It is the main argument on appeal, but we're also asking that this court look at error in the district court. If we decide that it is or isn't equitable or that the judge was or was not entitled to make this decision at this stage, which is now before us, all of the discussion thus far has been devoted to the jury question and more could of course be said. Are you raising the other question? Yes, we are raising the other question. Is it alright if we turn to the other question of the substance of the issue? One of the key errors of law that the district court made in determining the inventorship issue below is deciding whether or not Mr. Shum was a sole inventor for the patents at issue. He clearly asserted in the alternatives and pre-trial briefs at trial and in post-trial briefs that he was seeking in the alternative to be a joint inventor. Although Mr. Shum did make statements in testimony in court that he personally believed he was a sole inventor, those statements under the Ethicon case as well should be discounted. Those are the statements of a lay witness and they did not waive his claim to be a joint inventor as well. So when the court looked at whether or not he was only a sole inventor under four of the patents at issue, two STEP patents and two Fletcher patents, the district court made a critical error that affected the entire decision. Another key mistake that the district court... Well, it infected it if in fact there was merit to the argument of, let's say, contributing to the invention. But didn't the district court also conclude based on lengthy interaction with the witnesses that there was not an inventive contribution using that term very broadly? The district court did and I think he made a mistake also in not comparing all of the work that Mr. Shum and Mr. Vidal did together and Mr. Vidal's admission that they were working as a team together on this project. But Mr. Vidal said that the claims of the patents were carefully prepared so that they excluded Mr. Shum's contribution. He did argue that, Your Honor. That's correct. And the district court agreed with that, I gather. Ultimately, I believe the district court did, but I think it improperly discounted the other admissions from the court. I believe I'm over my time. Well, but do continue. We'll save your rebuttal time, but I had assumed that this was what you wanted to argue before us. Anyway, finish the sentence. Okay, I apologize. I think the district court improperly determined what the key inventive element was in the STEP patents, for instance, by looking to the patent prosecution history. And there, the statements that they determined were the key inventive element, which is the second clause of the first claim, subdivision C3 of the first patent, the STEP patent at issue, was clearly not the key inventive element. Mr. Vidal, for instance, told the patent office that that phrase merely made explicit what Mr. Shum and he were already working on. So I believe there are many errors, including that the court looked at it under the prism of sole inventorship, the key inventive element idea. The district court looked at this as a priority dispute who came up with each idea first rather than look at the issue as whether or not they were collaborating as a team. And those legal mistakes, I think, permeated the inventorship decision of the bench. Okay, we'll hear from the other side, and we'll save your rebuttal time, Mr. Kirsch. Mr. Taylor. If I may, I'd like to address first the Seventh Amendment issue, the jury trial issue, since it has been featured in both the briefs and the arguments of counsel. We have in this case, as the court knows, an inventorship trial that took place. It took place prior to the jury trial that would have taken place that resulted in an 82-page opinion by an experienced trial judge in Northern District of California. And the conclusion was not a single claim of the 27 claims of the seven patents was established by corroborating evidence to be invented by Mr. Schoen. But even if the district court did a very thorough job, and even if we might agree that the judge was correct, what about Beacon Theaters? Well, I think Beacon Theaters and I think this court's decisions in Gardco and AFCA made clear that it is very possible for a district court judge to exercise his or her discretion to try an equitable claim first. That may be done. That's within the district court's discretion. Here we have agreement that a 256 claim is a claim to which there is no right to jury trial, may be tried by the court, and may be tried by the court first unless it implicates or takes away from the plaintiff a right to a jury trial. And Beacon Theaters, Gardco, and AGFA are very helpful in this respect. They lay out the analysis, as I see it, that this court should go through in this case to determine whether Judge Jensen here should have impaned the jury to try this case or not. And the question is this. In looking at what he was trying in the separate trial, the court trial on advantage, is there an issue, a factual issue in that case that's common to a factual issue in Mr. Schoen's jury trial case, the common law claims that he has? If there is a common issue, then we have a question as to whether there should be a jury trial, where there's not a common issue, where there's not a fact that's going to be established in the court trial that is also a fact as to which he has a right to have a jury determinant in the other trial. Well, I think common facts, the whole fraud claim was based on the idea that Schum was left off the inventorship determination. Well, the whole key to the analysis is the commonality has to be between a fact that you have a right to a jury trial here and that the court can try there. In inventorship, you have no right to a jury trial. But you do have a—but the claim, it seems to me, the argument is that even though there's no right to a jury trial on inventorship, because of the pendency of the other claims, there is a right to a jury trial on the facts that will ultimately determine inventorship. And that leads to the key analysis. What are the common facts here? And I submit that Mr. Schum has not presented them either in the briefing or the oral argument. Because if we look at the court trial, the inventorship trial, the facts had to do with primarily documentary evidence, 19 or 20 groups of documentary evidence, to see if that corroborated Mr. Schum's invention, alleged invention, of certain claims back in the 1994, 1995, 1996, early 1997 time period. And if it did, mightn't there have been fraud? And if it didn't, perhaps there wasn't fraud. So why aren't they linked? And the district court carefully, in the inventorship decision, did not rule on fraud, didn't address fraud issues. He limited his decision to corroborating evidence under the 256. Although the district court said they are intertwined, but then seemed to have forgotten about that. There's no question that the determination of inventorship was relevant to the common law claims. But let's look at the issues in the common law claims. The issues as to which Mr. Schum had a right for a jury were issues like, did Mr. Verdiel conceal the fact that he formed a new company? Did Mr. Verdiel fraudulently conceal the fact that he had conversations with investors about how much their company may have been worth? Did Mr. Verdiel breach their agreement that they could both go forward and exploit this technology by not telling every, including the PTO, by not telling third parties that Mr. Schum has rights to this technology as well? None of the, first of all, all of those questions relate to the time period after the alleged inventorship when they were in the breakout period, when they were negotiating a dissolution. So the time periods are separate. But more importantly, the evidence is completely separate. There's not one issue among those that he's entitled to a jury trial that Judge Jensen passed on in his inventorship court proceeding. And it's instructive that when you look at the summary judgment order on these jury trial claims, nowhere in the summary judgment order does he rely on a factual determination that he made in the benchmark. There's no overlap between them. So, under GARCO, AGFA, Beacon Theaters, I think the analysis is clear that they're different. Now, Eli Lilly's an interesting case, because Eli Lilly, the court didn't go through this analysis and didn't make this comparison. But Eli Lilly may be an example where if the court had gone through this same analysis, the court might have concluded they should be trying together. Because the common underlying facts there had to do with a specific meeting of purported inventors where information was exchanged. And one issue was, was a contribution made by certain people at this meeting towards inventorship. Another question was, was confidential information disclosed or were people unjustly enriched? The entire nexus of that case, as the court stated in Eli Lilly, was on the common facts of what happened at that meeting, who contributed what, who said what, and what happened. This is just the opposite. And in fact, I submit that the GARCO-AGFA relationship between the inequitable conduct claims and the invalidity claims is much closer than what we have here, where we have inventorship on the one side and fraudulent concealment about their break-up period on the other. So for that reason, and the court can imagine that if all it took to make an inventorship claim or any equitable claim, which court trial, if all it took to make a jury trial, is for someone to say, oh, you lied about that, or you hurt this when you declared wrong on inventorship, every one of these claims would be court trial. But of course that isn't this case. The facts are weighty on all aspects of these issues. And so to say, if you decide this, then the sky will fall, isn't how the common law works? If inventorship, as Mr. Shem argues, is allowed to be the so-called common issue, which is not an issue of fact, but if inventorship were allowed to be a common issue, then we do have a dilemma where if someone simply, let's take paternity, which is decided by the probate courts as a family law matter, and that's a court determination. If you can turn that into a jury trial simply by saying someone lied about their paternity, therefore now it's a lie and a fraud case and I want a jury trial, you have, I submit, upset. Well, let's stay with the facts of this case. But in any event, I think the key to this case is that the facts are so different. The underlying facts are quite, quite different. And it's absolutely accepted, and I think for good reason, that the issue of inventorship was intended by Congress and for good policy reasons is a court trial issue, absent someone pointing to common facts that would make it, in any way, a jury trial. Let me ask you a question which neither of you really talked about. Section 256 talks about correcting inventorship based on mutual mistake. I didn't see that anyone here argued that there was a mutual mistake. Is that right? Well, that there was not a mutual mistake. It doesn't really talk about correction of inventorship based on fraud or based on some sort of constructive trust, I don't know, some kind of equitable interest, perhaps, to put it in the context of equity. I'm just trying to understand where and how the dividing line is between the common law allegations and the inventorship allegations. I think, with respect to the 256 issue, your Honor's right that 256 talks about correcting inventorship where there's no evidence of dishonesty, essentially, where there's been a mistake, which makes it equitable and a reformation kind of claim. In the inventorship case here, what Judge Jensen decided, as I read his decision on the equitable issues, is simply whether or not corroborative evidence had been introduced that met the standard of proof to demonstrate that the inventorship should be changed. And the answer was no. He did not decide, and specifically refrained from deciding, anything about whether the parties' conduct relative to each other on a state law claim was fraudulent, and did not decide those issues, addressed those issues for the first time in the Summary Judgment Order, and said, under the Summary Judgment Order, if we look at what the fraudulent allegations are under California law, applying the person case and looking at their agreement that they signed some three and a half years before the lawsuit was filed, looking at that agreement as to these parties and these claims, there's simply no duty of the kind that Mr. Shum is trying to impose upon Mr. Gertler. Was that under 256? That was not. That's really, that's the question. Neither of you really answered it. I don't know if anybody ever has. But if, in fact, the correction of the inventorship does require showing that there was a bad faith allegation of inventorship in the first place, I do have trouble putting it under 256 with all of the constraints, including the equitable nature of that issue. My understanding of 256 is that it does not require fraud. It's in the nature of reformation by mistake, and that's what the judge decided. Mr. Shum asked for that. The judge decided without regard to fraud or anything else. I'm simply determining that this is not a patent which will be reformed or corrected by virtue of mistake. So the parties are agreed that if, in fact, as a matter of the technicalities of inventorship, there was an inventive contribution, then both sides agree that inventorship should be corrected? Well, I don't know, Your Honor. The honest answer to that question is it would depend on what it is and how it meets the clear and convincing burden of proof based on the findings that the judge made in his decision. In the abstract, it's difficult for me to say. Okay. I realize this is not something that either of you seems to have thought required consideration, but it does seem to me that the question of the boundary between law and equity and the relationship to the common law claims is involved in this issue. Well, it could be. I guess what struck me is that this is very different, for example, than the inequitable conduct situation, and the point that Your Honor made, in fact, about the shire of fascia comparison between that kind of a potential fraud claim and a correction of inventorship, because correction of inventorship is entirely equitable and is based on simply will the judge issue an order instructing the PTO to correct inventorship on a patent based on evidence that the purported inventor has presented to him. But the trial judge seemed to feel that by resolving the question of inventorship based on the specific patents and the specific claims and what they covered, and now they were written, that resolved the common law issues. Is that the posture of the case? That's correct. The trial judge determined that Mr. Shum still had a right to jury trial on any common law issues that remained. There were some that remained, and they were disposed of by way of summary judgment. Okay. Do you have any questions? No. Any questions? Thank you. Okay. Thank you, Mr. Taylor. Mr. Kirsch. Counsel admits that if there are common issues or common facts, then Mr. Shum would be entitled to a jury trial on inventorship. Here we contend that there's a plethora of common issues and common facts that the district court found were inextricably intertwined. He didn't admit all of that. Okay. I apologize if I was reading into what he was saying, but I do believe that that's true under Beacon Theorist. If there are common facts that need to be decided, even in an inventorship case, then a jury trial is appropriate. Here the common issues are whether there's corroborating evidence that demonstrates Mr. Shum was a co-inventor, and circumstantial evidence, including Mr. Vidal's contemporaneous admissions that they were co-inventors. Mr. Shum's conduct, where he was surreptitiously working behind the scenes to hide the valuation of the technology while he went out and filed a copycat patent application. All of that conduct goes to both the fraud claim and the correction of inventorship claim. It's all relevant. It's all one soup and should be considered by a jury under Beacon Theorist. It's interesting to remember that this case began in state court when Mr. Shum asserted a claim for fraud based on common law, and it was removed by Mr. Vidal with the argument that the determination of inventorship under federal law was a necessary element of plaintiff's state law claims. The district court correctly found that factually and legally the common law claims and the inventorship claims were inextricably bound. Below and on appeal, Mr. Vidal's counsel has never explained how issues could be necessary elements of each other or inextricably bound up with each other, but not present common issues under Beacon Theorist. They rely on GARDCA and AFCA, but those cases are completely inapposite. Those cases concern inequitable conduct offenses in patent infringement cases, and this court held that there wasn't sufficient commonality between the issue of inequitable conduct in the PTO and the validity and forcibility issues in the main patent infringement claim. That case is so far afield from this case where the core allegations in this case, the core fraud allegations of fraudulent omission, form the core issues in the inventorship 256 claim. And I would ask the court, suggest to the court that the cabinet vision case, which I didn't touch upon as much as I should have in my brief, frankly, is very instructive. In that case, this court said that an inequitable conduct offense based on fraud in the PTO had sufficient commonality under Beacon Theorist with a Walker process claim based on the same facts. And that decision is much closer to the same fraud-based conduct as we have here. So I believe that counsel can never explain how the common facts that are inherent in this case, that they agree below are inherent in this case, do not deserve a jury trial. But do you agree that if we get to the stage of looking at inventorship and decide, in this hypothetical, that the inventorship was correctly designated based on all of the reasons on that side of the case, that there's anything that that does end the case? I don't agree that it ends the case. I believe that there are other legal errors in the second summary judgment motion concerning the breach of contract claim and the fraud claim. And there's also the unjust enrichment claim with the district court improperly dismissed on the pleadings at the very start of the case. With regard to the unjust enrichment claim, the district court determined that before all summary judgment motions, that the unjust enrichment claim had the same elements as plaintiff's fraudulent concealment claim. And that's plainly not true. Verdell, on appeal, doesn't even try to argue that. They argue that we put the wrong label on the claim, that instead of an unjust enrichment label, we should have labeled it a restitution based on quasi-contract, based on the McBride case. We suggest, if that's true, we'd be glad to do that, and that we deserve the right to amend our complaint, to relabel our unjust enrichment claim as restitution based on unjust enrichment, and proceed with our claim. So, thank you, Your Honor. I have nothing more. Okay, thank you both. The case is taken under submission.